UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

SEP 0 7 2006

AT LONDON
LESLIE G WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-440-GWU

ANTHONY EDWARDS,                                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Edwards

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

Edwards

account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Edwards

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Edwards

The "severe impairment" stage has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirement may be used to weed out claims that are "totally groundless." Id., n.1.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Edwards

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

Edwards

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Anthony Edwards, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine, a history of hypertension controlled with medication, and a history of infection with H. pylori.  (Tr. 23).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Edwards retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 24-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, could stand or walk only four hours in an eight-hour day, and could occasionally climb, stoop, and crawl. (Tr. 622-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 623).

7

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Edwards does not challenge the ALJ's physical restrictions, which are consistent with the conclusions of a state agency reviewing source (Tr. 198-206), with a consultative physical examiner (Tr. 360-8) and not inconsistent with the results of a functional capacity evaluation in October, 2000 (Tr. 184), which were subsequently adopted by a treating physician (Tr. 223).

Mr. Edwards does argue on appeal that the ALJ's conclusions regarding mental restrictions, specifically his failure to determine that Mr. Edwards had a "severe" impairment due to memory and concentration problems, is reversible error. Counsel for the plaintiff notes that Mr. Edwards was seen by a counselor at a local Comprehensive Care Center (CCC) in October, 2003 with problems related to the death of his mother in June of that year, conflict with a sister and her husband related to their mother's illness, and difficulties relating to his daily care for a grandmother with dementia. (Tr. 331). At that time, the individual completing an "admission appropriateness" form checked a box indicating that the plaintiff had "intact" recent and remote memory. (Tr. 332). A staff psychiatrist evaluated the plaintiff in November, 2003, at which time Mr. Edwards described the same problems, was noted to appear sad and depressed, and had a dull affect, but was also described as alert and fully oriented. (Tr. 349-50). The psychiatrist assessed

8

a depressive disorder, bereavement, relational problems, and "rule out" personality disorder, with a Global Assessment of Functioning (GAF) score of 55. (Tr. 350, 558). A GAF score of 55 reflects moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Medications including Prozac and Trazodone were prescribed. (E.g., Tr. 555). No specific restrictions were assessed. At the first of two administrative hearings, the plaintiff testified initially that he had not noticed any improvement with Prozac, but then admitted that "sometimes I don't think about stuff as hard as I used to," and that he had less of a "short fuse." (Tr. 593). He denied medication side effects, but apparently stopped going to CCC after approximately March, 2004 (Tr. 554), until seeking treatment again in March, 2005 (Tr. 551). At the second administrative hearing, on April 4, 2005, the plaintiff testified that he had recently restarted treatment at the CCC and had been given a pill which was supposed to help him relax, but he did not find it effective. (Tr. 614-15). The "admission appropriateness" form from the CCC was dated March 16, 2005, and Mr. Edwards reported that he was "wound pretty tight," could not sleep, was confused, had been caring for his mother who passed away, was taking care of his grandmother who kept talking about his mother, and had a poor appetite, sexual problems, and memory problems. (Tr. 551). The CCC staff member who completed the form appeared to initially indicate that there were no memory problems, but then placed checkmarks next to boxes indicating difficulty with immediate and remote

9

memory. (Tr. 552). The context in which this form was written, although not explicit, strongly suggests that these were the plaintiff's subjective complaints.

The ALJ noted the checkmarks regarding memory in the recent Admission Appropriateness Form, but concluded that the plaintiff did not have a "severe" impairment due to memory problems. (Tr. 23). The ALJ noted that the change in the checkmarks was presumably based on subjective statements "since no apparent testing was performed." (Tr. 22, n.1).

While the plaintiff argues that restrictions on memory and concentration should had been included in the hypothetical question, there is evidence to support the ALJ's conclusion that only subjective statements supported the existence of a problem in this area. As the ALJ noted, there was no specific testing and none of the actual diagnoses made by the staff psychiatrist at CCC suggested specific memory or concentration related problems, as previously described. The ALJ went into detail regarding the plaintiff's activities of daily living, which included caring for his personal needs, taking care of his grandmother, performing household chores as limited by his physical problems, shopping, cooking for himself and his grandmother, visiting doctor's offices, and regularly visiting with friends and relatives. (Tr. 22, 614-16). He had also formed a friendship with a lady who had become pregnant and who was asserting that he was the father. (Tr. 605). The only example he gave of memory difficulties was forgetting what he was doing while cooking, apparently on one occasion. (Tr. 620).

Edwards

Therefore, a reasonable fact finder could have concluded that the plaintiff did not have sufficient memory or concentration problems to limit his ability to perform work related activities. Even if the recent records from CCC, which were apparently not completed by an acceptable medical source under 20 C.F.R. Section 416.913, were construed as a diagnosis of memory difficulties, it is also true that the mere diagnosis of a condition says nothing about its severity. See, e.g., Young v. Secretary of Health and Human Sevices, 925 F.2d 146, 151 (6th Cir. 1990). The GAF scores given earlier were being related to bereavement, relational difficulties, and depression, not to specific memory and concentration problems.

The Court concludes that substantial evidence supports the administrative decision, which will be affirmed.

This the _____7_____ day of September, 2006.

G. WIX UNTHANK,
Senior Judge

11